UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

YVROSE JEAN-BAPTISTE,

                                        Plaintiff,

                    -against-

NYC DEPARTMENT OF EDUCATION, DINA KOSKI,          07 CV 3535 (FB)(CP)
Officially and Individually, DEBRA GERSHMAN,
Officially and Individually,

                                        Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff Yvrose Jean-Baptiste, a former teacher at P.S. 26 in Queens, brings this action against defendants New York City Department of Education ("DOE"), Dina Koski, the principal of P.S. 26 ("Dr. Koski"), and Debra Gershman, the assistant principal at P.S. 26 ("AP Gershman") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981 and 1983, the New York State Human Rights Law, and the New York City Human Rights Law alleging that she was subjected to intentional harassment and discrimination based on her race (African-American), color and/or national origin (Haitian), and/or her opposition to alleged discriminatory practices.

Defendants now move for summary judgment on the following grounds: (1) the court does not have subject matter jurisdiction over any claims that occurred prior to August 4, 2004; (2) plaintiff's State and City human rights law claims are barred by the doctrines of election of remedies, *res judicata* and collateral estoppel; (3) plaintiff has failed to establish a *prima facie* case of race, color and/or national origin discrimination; (4) plaintiff has failed to

establish a *prima facie* case of retaliation; (5) plaintiff's §§ 1981 and 1983 claims against DOE must be dismissed as plaintiff cannot show a municipal policy or custom; and (6) Defendants Koski and Gershman are entitled to qualified immunity.

## STATEMENT OF FACTS

The Court is respectfully referred to the defendants' Statement of Undisputed Material Facts Under Local Civil Rule 56.1, dated May 1, 2009 ("56.1 Statement"), the Declaration of Andrea O'Connor, dated May 1, 2009 ("O'Connor Declaration"), and the supporting evidence cited to therein for a statement of pertinent and material facts.

## ARGUMENT

## POINT I

**ANY ALLEGED ACTS OF DISCRIMINATION AND/OR RETALIATION THAT OCCURRED MORE THAN 300 DAYS PRIOR TO THE FILING OF THE ADMINISTRATIVE CHARGE ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.**

In New York, Title VII claims are time-barred if the plaintiff does not file a charge with the Equal Employment Opportunity Commission ("EEOC"), or a qualified state or local fair employment practice agency, such as the New York State Division of Human Rights ("SDHR"), within 300 days after the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); Morris v. Ales Group USA, Inc., No. 04 CV 8239, 2007 U.S. Dist. LEXIS 47674, at *36 (S.D.N.Y. June 28, 2007)(Crotty, U.S.D.J.)(Title VII). "[S]trict adherence" to the statute of limitations is mandated. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 108 (2002).

Plaintiff did not file a charge with the SDHR until May 31, 2005. Ex. "HHH," SDHR Charge. Thus, all of plaintiff's claims which pre-date August 4, 2004 are time-barred and must be dismissed. These claims include: (1) any allegations pertaining to plaintiff's transfer to

P.S. 26; (2) plaintiff's claim that Dr. Koski attempted to "dissuade" her from transferring to P.S. 26; (3) any allegations pertaining to plaintiff's assigned class and/or grade for the 2003-2004 school year; (4) plaintiff's claim that for approximately three (3) weeks in the fall of 2003 she was assigned to perform substitute teaching duties at P.S. 26; (5) plaintiff's claim that she was designated as a "paraprofessional" the 2003-2004 school year; (6) plaintiff's claim that during the fall of 2003 she performed "clerical duties" for a co-worker; and (7) any allegations pertaining to memorandums issued to plaintiff and/or conferences held in connection with plaintiff's performance during the 2003-2004 school year.[1]

## POINT II

### PLAINTIFF'S CLAIMS ARE BARRED, IN PART, BY THE DOCTRINES OF ELECTION OF REMEDIES, RES JUDICATA AND COLLATERAL ESTOPPEL.

A plaintiff asserting claims under the NYSHRL and NYCHRL is required to proceed by either filing a complaint in an administrative forum or in state court, but not both. See N.Y. Exec. Law § 297 (9); see also N.Y.C. Admin. Code § 8-502(a); Moodie v. Fed. Reserve Bank of New York, 58 F.3d 879 (2d Cir. 1995); see also Marine Midland Bank v. New York State Div. of Human Rights, 75 N.Y.2d 240 (1989). These judicial and administrative remedies are intended to be mutually exclusive. Therefore, when the administrative forum makes a final determination and issues a "No Probable Cause" determination, plaintiff's NYSHRL and NYCHRL claims are barred from being relitigated in a subsequent civil action. See Thomas v. New York City Health & Hosps. Corp., 2004 U.S. Dist. LEXIS 17694 (S.D.N.Y. 2004).

---

[1] Plaintiff's discrimination claims brought pursuant to the NYSHRL and NYCHRL are governed by an even shorter one year statute of limitations contained in New York Education Law § 3813(2-b). See Amorosi v. South Colonie Independent Central School District, et al., 9 N.Y.3d 367 (2007). While the Amorosi case only contained an NYSHRL claim, the principles articulated by the Court of Appeals in that case apply equally to all state law claims within the scope of Education Law §3183 (2-b), including plaintiff's NYCHRL claims.

Prior to commencing this action, plaintiff filed a complaint with the SDHR claiming NYSHRL and Title VII violations. See Ex. HHH, SDHR Complaint. Plaintiff's SDHR complaint was based on the same allegations of race, color, national origin and/or hostile work environment that plaintiff now asserts in her federal complaint. Id. On April 25, 2007, the SDHR issued a "No Probable Cause" determination dismissing plaintiff's claims in their entirety on the merits. See Ex. JJJ, Determination and Order After Investigation, dated April 25, 2007. Therefore, plaintiff's decision to file an administrative complaint with the SDHR constituted an irrevocable election of remedies requiring that her NYSHRL claims that pre-date the SDHR complaint be dismissed in their entirety.

Similarly, because plaintiff's allegations herein are identical to those asserted in her SDHR complaint, plaintiff is precluded by the doctrines of *res judicata* and collateral estoppel from reasserting these claims. Compare Ex. B, First Amended Complaint, dated January 24, 2008, with Ex. HHH, SDHR Complaint; see DeCintio v. Westchester County Medical Ctr., 821 F.2d 111, 117 (2d Cir. 1987)(applying the doctrines of res judicata and collateral estoppel to quasi-judicial determinations of administrative agencies); see also McFarland v. NYS Div. of Human Rights, 241 A.D.2d 108, 113 (1st Dep't 1998)(SDHR does not issue a "No Probable Cause" determination until the plaintiff has had a "full and fair opportunity" to litigate her claims).

### POINT III

### PLAINTIFF CANNOT ESTABLISH A CLAIM OF DISCRIMINATION BASED ON HER RACE, COLOR AND/OR NATIONAL ORIGIN.

Plaintiff's timely claims cannot establish a *prima facie* case of discrimination based on her race, color and/or national origin.

**A.      Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination**

To establish a *prima facie* case, plaintiff must point to record evidence showing that: (1) she is a member of a protected class; (2) was qualified for her position; (3) she was subjected to an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination based on plaintiff's membership in the protected class. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); see also Stern v. Trustees of Columbia Univ., 131 F.3d 305, 311-12 (2d Cir. 1997). Here, plaintiff fails to establish three (3) of these elements and therefore her claims of discrimination must fail. Hicks, 509 U.S. at 507; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

### (1) Plaintiff Failed to Perform her Job Satisfactorily

In order to establish the second prong of a *prima facie* case, the plaintiff must demonstrate "satisfactory job performance, in accordance with the particular employer's criteria for satisfactory performance." See Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 30 (2d Cir. 1997). As plaintiff's performance record contains numerous unsatisfactory observation reports, an unsatisfactory performance evaluation, counseling memorandums and parent complaints, plaintiff fails to establish that she satisfactory performed her employment duties. As such, plaintiff discrimination claims fail as a matter of law.

The evidence before the Court establishes that plaintiff failed to perform her duties as a teacher in a satisfactory manner. Dr. Koski testified that when plaintiff began working at P.S. 26, Dr. Koski observed that plaintiff "had difficultly controlling her classroom" in that the "children wouldn't be listening to her." Ex. D, Koski Dep. at 14-24. Dr. Koski testified that she spoke with plaintiff about what she had observed and "offered her help" in the form of a math coach and a literacy coach. Ex. D, Koski Dep. at 27:7-14. However, plaintiff

"refused" the assistance that was offered to her and that plaintiff would tell the coaches that "they weren't allowed in her [class]room." Ex. D, Koski Dep. at 69:21-24.

Dr. Koski also received complaints from parents of students in plaintiff's 2003-2004 class. Ex. D, Koski Dep. at 37:3-25; 38:1-7. Dr. Koski testified that there were complaints about "homework and the fact that the assignments were not clear" and that "[p]arents frequently complained about the assignment itself" and "that homework was not often checked." Ex. D, Koski Dep. at 37:3-25; 38:1-7. Furthermore, during the 2003-2004 school year a parent complained to the superintendent regarding plaintiff and Dr. Koski was "ordered to move the child out of [plaintiff's] class." Ex. D, Koski Dep. at 39:2-7.

Plaintiff's sub-par performance continued in the 2004-2005 school year when, in response to another parent complaint, Dr. Koski and AP Gershman met with plaintiff, and her union representative, on October 22, 2004 to discuss the fact that plaintiff had told a student that she had failed E-CLAS, which is an educational assessment tool. Ex. "G," Letter from Dr. Koski to plaintiff, dated October 22, 2004. Plaintiff testified that she did, in fact, tell the student that "you didn't pass the test" and that she had received a letter from the student's parent regarding her comment. Ex. A, Pl. Dep. at 97:5-12; 97:18. Also at the October 22, 2005 meeting, Dr. Koski noted that plaintiff continued to fail to follow the delineated homework policy. Ex. G, Letter from Dr. Koski to plaintiff, dated October 22, 2004.

On October 29, 2004, AP Gershman informally observed plaintiff's classroom. Ex. H, Letter from AP Gershman to plaintiff, dated November 3, 2004. During this visit to plaintiff's classroom, AP Gershman observed that the homework assignment from the previous day was not clear – as evidenced by a student's question. Id. During the classroom visit, AP Gershman suggested alternative ways in which the assignment could have been worded so as to avoid confusion. Id. In a letter dated November 3, 2004, AP Gershman recounted the classroom

visit and indicated to plaintiff to that "homework assignments must be differentiated, specific and clear." Id. Dr. Koski then observed plaintiff's class on November 8, 2004 and, thereafter, met with plaintiff to discuss the fact that, among other things, plaintiff's prior lesson plans were not available for review, that plaintiff was not using the correct "Math Message" that had been previously implemented at P.S. 26, and that plaintiff continued to fail to use the correct homework policy. Id. Based on the above-described deficiencies in plaintiff's lesson, Dr. Koski determined that the lesson was unsatisfactory. Id.

Plaintiff continued to encounter complaints from her students' parents during the 2004-2005 school year, particularly when she failed to appear for her scheduled Parent-Teacher conferences. Ex. K, Letter from Dr. Koski to plaintiff, undated. Moreover, on December 6, 2004, Dr. Koski received a letter from a parent of one of plaintiff's second grade students which stated, among other things, the parent's concerns regarding homework assignments and the "feeling" that the parent was "home schooling" her child. Ex. "L," Letter from "Parent" to Dr. Koski, dated December 6, 2004. Specifically, the parent took issue with the daily homework assignment that the student "write down what you learned in school today." Id.

On December 8, 2004, plaintiff, Dr. Koski, AP Gershman and Arlene Goodman, plaintiff's union representative, met to discuss plaintiff's performance and Dr. Koski and AP Gershman's "plans to assist [plaintiff]." Ex. "M," Letter from Dr. Koski to plaintiff, dated December 10, 2004. At this meeting, Dr. Koski advised plaintiff that she was in danger of receiving an unsatisfactory rating and, in effort to assist plaintiff developing her lesson plans, Dr. Koski informed plaintiff that she would be collecting plaintiff's plan book every Wednesday and that the plan book must include teaching points for all lessons. Id. Dr. Koski also, once again, offered the assistance of the math and literacy coaches, however, as noted above, Dr. Koski

testified that plaintiff "refused" the assistance that was offered to her. Ex. D, Koski Dep. at 69:21-24; Id.

With respect to the 2005-2006 school year, as fully outlined in defendants' 56.1 Statement, plaintiff was absent from P.S. 26 from November 2005 through June 2006. Dr. Koski testified that plaintiff was rated as "satisfactory" for this school year "because [plaintiff] had been out ill and [Dr. Koski] felt it was unfair to give [plaintiff] an unsatisfactory for year" based on that fact. Ex. D, Koski Dep. at 41:14-22.

When plaintiff returned to P.S. 26 for the 2006-2007 school year, she was assigned to teach a kindergarten class and her performance issues began shortly after the school year started. Ex. A, Pl. Dep. at 116:3-8. Indeed, on September 6, 2006, Dr. Koski, AP Gershman and Ms. Won, the Local Instructional Superintendent, met with plaintiff to discuss the observations Dr. Koski had made while visiting plaintiff's classroom. Ex. "NN," Letter from Dr. Koski to plaintiff, dated September 7, 2006. Dr. Koski testified that she "go[es] to every classroom every day." Ex. D, Koski Dep. at 23:9-12. Specifically, Dr. Koski instructed plaintiff that the "physical environment" of the classroom needs improvement, that the classroom did not contain writing, art, math and science centers, and that the classroom library did not contain the appropriate sections. Id. Dr. Koski noted that "significant improvement must be identified by Friday, September 8, 2006." Id.

On September 11, 2006, Dr. Koski, AP Gershman, plaintiff and plaintiff's union representative met to discuss whether any improvement had been made to plaintiff's classroom. Ex. "PP," Letter from Dr. Koski to plaintiff, dated September 13, 2006. During this meeting, Dr. Koski advised plaintiff that there was a "slight improvement" in plaintiff's classroom but that the room was still not "child friendly." Id. Dr. Koski also advised plaintiff that the literacy coach

would continue to attempt to assist plaintiff. Id. However, on January 12, 2007,[2] Sheila Behrman, P.S. 26's literacy coach, sent a letter to Dr. Koski stating that plaintiff refused to allow Ms. Behrman to "plan with her" and would not permit Ms. Behrman to enter the classroom. Ex. "QQ," Letter from Sheila Behrman to Dr. Koski, dated January 12, 2007.

In March 2007, plaintiff failed to provide a "sub folder," a folder for a substitute teacher, which contained the necessary information for a substitute teacher, including a class list, a list of students that take the bus and/or take medication. Ex. "SS," Letter from Dr. Koski to plaintiff, dated March 27, 2006. Plaintiff also failed to submit check-lists for the upcoming school year's literacy and math programs in a timely fashion and when Dr. Koski requested the lists – nearly a month after their due date – plaintiff responded that she not completed them. Id.

Plaintiff's disregard for her professional responsibilities and for school policy continued when she failed to attend an Informal Grade conference on May 24, 2007 and thereafter, at the Formal Grade Reorganization Conference on May 29, 2007, failed to have prepared the paperwork necessary to aid in the reorganization of P.S. 26's kindergarten classes. Ex. "TT," Letter from Dr. Koski to plaintiff, dated June 18, 2007. Dr. Koski testified that while plaintiff "should have received an unsatisfactory rating" for the 2006-2007 school year, Dr. Koski rated her as satisfactory since she had been "out sick" for part of the school year. Ex. D, Koski Dep. at 60:11-19.[3]

Plaintiff's unsatisfactory job performance continued during the 2007-2008 school year. At the beginning of the school year, plaintiff was absent and failed to contact P.S. 26 by 7:10 a.m. – as per school policy – to arrange for a substitute. Ex. "DDD," Letter from Dr. Koski

---

[2] As fully outlined in Defendants 56.1 Statement, plaintiff was absent from work during portions of September, October and November 2006.

[3] As fully outlined in Defendants 56.1 Statement, plaintiff was absent from work during portions of September, October and November 2006.

to plaintiff, dated October 3, 2007. Rather, plaintiff called P.S. 26 at 8:20 a.m. to inform the school that she was going to be absent and, nevertheless, failed to arrange for a substitute teacher to cover her class. Id.

With respect to classroom observations, in November 2007, Dr. Koski and plaintiff met for a pre-observation conference during which Dr. Koski reviewed plaintiff's proposed lesson plan. Ex. "EEE," Letter from Dr. Koski to plaintiff, dated December 6, 2007. During this conference, Dr. Koski suggested ways in which plaintiff's proposed lesson plan could be improved. Id. Dr. Koski then observed plaintiff's class on November 8, 2007 and, following that observation, met with plaintiff to discuss her lesson plan. Id. During the post-observation conference, Dr. Koski noted that plaintiff had not incorporated any of the suggestions offered during the pre-observation conference and that the lesson plan "was not clear and did not include any link to the student's prior knowledge." Id. Dr. Koski also noted that plaintiff did not encourage all the students to participate in the lesson's activities and did not work on expanding students' language and thinking skills. Id. Therefore, Dr. Koski indicated that this lesson plan was unsatisfactory. Id.

Significantly, plaintiff acknowledges that that during the 2007-2008 school year she was "[s]leeping while [she] was teaching . . . in the classroom" and that children were in the classroom while she "was kind of dozing." Ex. A, Pl. Dep. at 121:8-21. Indeed, the SDHR investigator who conducted a "fact-finding" conference in between plaintiff and a representative from the DOE in connection with plaintiff's SDHR complaint even noted that "[plaintiff] actually napped during part of this conference." Ex. III, Final Investigation Report and Basis of Determination, dated April 25, 2007. Dr. Koski testified that during the 2007-2008 school year plaintiff was not "well prepared to teach within her classroom, so her children were not receiving the instruction that they needed . . ." Ex. D, Koski Dep. at 42:25; 43:2-5. Specifically, Dr. Koski

testified that during the 2007-2008 school year, plaintiff's "lesson plans were not current or up to date and [plaintiff] didn't have a folder ready if she was absent for the substitute." Ex. D, Koski Dep. at 70:4-13. Dr. Koski also testified that plaintiff's students' scored lower on the E-CLAS assessment test than the other kindergarten students. Ex. D, Koski Dep. 42:23-25; 44:2-5. Therefore, Dr. Koski testified that plaintiff received an unsatisfactory rating for the 2007-2008 school year. Ex. D, Koski Dep. at 14-22.

In light of the extensive evidence before the Court of plaintiff's unsatisfactory performance, and, significantly, complaints by parents of plaintiff's students, plaintiff cannot establish that she satisfactorily performed her employment duties. As such, plaintiff's race, color and/or national origin discrimination claim fails as a mater of law.

### (2) Plaintiff Has Not Suffered an Adverse Employment Action

Even if plaintiff could establish that she had performed in a satisfactory manner, plaintiff cannot establish that she suffered an adverse employment action. As noted above, in order for plaintiff to establish a *prima facie* case of discrimination, she must demonstrate that she suffered an adverse employment action. Charles v. City of New York, 2007 U.S. Dist. LEXIS 68712 at *26 (S.D.N.Y. September 17, 2007). It is well settled that in an action alleging employment discrimination, an adverse employment action must take the form of a "materially adverse change in the terms and conditions of her employment." Id. quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). Moreover, material adversity must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya, 202 F.3d at 640.

Materially adverse changes include "termination, demotion evidenced by decrease in wage or salary, a less distinguished title, loss of benefits, or diminished responsibilities." Delgado v. Triborough Bridge & Tunnel Auth., 485 F. Supp. 2d 453, 461 (S.D.N.Y. 2007)

quoting Galabya, 202 F.3d at 640. While there are no "bright-line rules" for determining whether an employee has suffered an adverse employment action . . . "[t]he key . . . is that the plaintiff must show that the [action] created a 'materially significant disadvantage.'" Islamic Soc'y of Fire Dep't Pers. v. City of New York, 205 F. Supp. 2d 75, 83 (E.D.N.Y. 2002) (internal citations omitted). Moreover, the cumulative effect of several non-adverse actions cannot substitute for the showing of an actual adverse action. Hill v. Rayboy-Brauestein, 467 F.Supp.2d 336, 356 n.22 (S.D.N.Y. 2006).

Here, as explained below, none of the actions alleged by plaintiff are materially adverse. Plaintiff has not been demoted, fired or had her salary decreased. Nor has she been formally disciplined in any way. Ex. A, Pl. Dep. at 33:15-20. Rather, plaintiff alleges that she was: (1) subjected to heightened scrutiny in the form of classroom observations and evaluations; (2) issued memorandums and attended conferences regarding her performance; (3) had "outsiders" attempt to visit her classroom; and (4) evaluated by the DOE's Medical Division. Plaintiff alleges that these alleged incidents occurred because of her race, national origin and/or color. Ex. B, First Amended Complaint. However, such allegations are not sufficiently adverse as to create a materially significant disadvantage.

Plaintiff fails to establish that her classroom observations, or the frequency of the observations of her teaching skills and performance, or what she describes as the excessive monitoring of her performance, are adverse employment actions as a matter of law. The fact that plaintiff felt that the monitoring was disruptive and/or excessive is insufficient to establish that she suffered a discriminatory adverse employment action. See Hill, 467 F. Supp. 2d at 355 ("excessive scrutiny" is not an adverse employment action, particularly where plaintiff's only evidence of disparate treatment was "her own perception that she was treated differently"); Morrison v. Potter, 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005)("being called into supervisor's

office to discuss work issues" is not an adverse employment action, even if it causes the employee embarrassment or anxiety); Lumhoo v. Home Depot United States, 229 F. Supp. 2d 121, 150 (E.D.N.Y. 2002)("Disciplinary notices, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.")(emphasis added); Nicastro v. Runyon, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999)(excessive scrutiny from supervisors could not support a Title VII claim).

Moreover, the written and oral criticisms of plaintiff's performance by Dr. Koski and/or AP Gershman, even if believed to be unjustified, are not adverse employment actions. See Henriquez v. Times Herald Record, 1997 U.S. Dist. LEXIS 18760 at *16 (S.D.N.Y. Nov. 25, 1997), aff'd, 165 F.3d 14 (2d Cir. 1998)(unfair criticism of plaintiff's performance was not the type of employment action that courts have found to be materially adverse). Indeed, the Second Circuit has explicitly held that unsatisfactory evaluations, without any attendant negative circumstances such as a demotion or loss of pay or benefits, do not constitute an adverse action. See Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 756 (2d Cir. 2004)(holding that a negative employment evaluation that had no effect on the terms and conditions of the complainant's employment did not constitute an adverse employment action). Here, there are no "attendant negative circumstances" and therefore plaintiff's discrimination claim based on the alleged "increased scrutiny" and negative evaluations must fail as a matter of law.

To the extent that plaintiff is asserting that her referral to the DOE's Medical Division for a medical examination was somehow an adverse employment action, such an argument fails as the referral resulted in the grant of leave of absence plaintiff herself requested. Prior to plaintiff's referral to the Medical Division she had been absent from work for nearly a month and had submitted numerous doctor's notes which attested to her inability to function at

work. Ex. "AA," Note from K. David Tavakoli, M.D., dated November 10, 2005; Ex. "BB," Note from K. David Tavakoli, M.D., undated; Ex. "CC," Letter from J. Roosevelt Clerisme, M.D., dated November 17, 2005; Ex. "EE," Note from K. David Tavakoli, M.D., dated November 28, 2005; Ex. "FF,' Letter from J. Roosevelt Clerisme, M.D., dated November 29, 2005.

Moreover, <u>prior</u> to the actual medical examination, on January 5, 2006, plaintiff submitted a request for a restoration of health leave of absence from February 1, 2006 through July 2006. Ex. "LL," Application for UFT Sabbatical Leave of Absence, dated January 5, 2006. Indeed, plaintiff testified that she requested a leave of absence because "[t]he doctors requested [that she] stay out of work." Ex. A, Pl. Dep. at 115:22-23. Thereafter, on January 6, 2006, plaintiff appeared for her medical examination at the DOE's Medical Division and, following the examination, the DOE medical inspector agreed with both plaintiff and her doctors and deemed plaintiff "not fit at present time" and recommended a "health leave" "until June 2006." Ex. "MM," Employee Medical Review, dated January 9, 2006.

This Court has held that a referral to the DOE's Medical Division for the purposes of a medical evaluation is not an adverse employment action unless it has an adverse effect on the individual's working conditions. <u>See</u> <u>Meder v. City of New York, et al.</u>, 2007 U.S. Dist. LEXIS 75400 (E.D.N.Y. 2007) <u>citing</u> <u>Bazile v. City of New York</u>, 215 F. Supp. 2d 354, 385-86 (S.D.N.Y. 2002) <u>aff'd</u>, 64 Fed. Appx. 805 (2d Cir. 2003). Therefore, plaintiff cannot now contend that her referral to the Medical Division, which led to the grant of her <u>requested</u> leave of absence, was somehow "adverse."

> **(3) Plaintiff Cannot Establish That Any Alleged Adverse Employment Actions Occurred Under Circumstances Giving Rise To An Inference Of National Origin Discrimination.**

Even assuming, for the purposes of this motion only, that plaintiff could establish the first three prongs of the McDonnell Douglas analysis, she still would be unable to demonstrate that the alleged adverse actions occurred under circumstances giving rise to an inference of discrimination. Plaintiff merely speculates that the defendants' decisions to refer to the medical division, rate her as unsatisfactory, to issue her counseling memorandums and to, allegedly, subject her to frequent observations were motivated by discriminatory animus. Plaintiff's arguments are unavailing and cannot defeat defendants' motion for summary judgment because there is simply no evidence that the foregoing actions were motivated by animus towards plaintiff's race, color and/or national origin.

In fact, plaintiff has not produced any evidence, other than her own conclusory assertions, that would allow a reasonable trier of fact to infer that any of the actions alleged to have been taken against her by defendants were motivated by animus against plaintiff's race, color and/or national origin. Plaintiff's only supposed "evidence" of discrimination is plaintiff's own testimony that, essentially, there could be no other possible explanation for defendants' actions other than discrimination. Such evidence is insufficient to establish discriminatory animus as a matter of law. See Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001)

For instance, plaintiff contends that Dr. Koski "harassed" her because she "used to be in [Dr. Koski's] office all the time with the letters of disciplinary actions" and would have "unannounced meeting[s]." Ex. A, Pl. Dep. at 57:12-22. Plaintiff further testified that Dr. Koski "harassed" her by "coming to the room all the time and bring[ing] outsiders, people, . . . to my classroom." Ex. A, Pl. Dep. at 66:9-11; 72:2-16. Plaintiff believed that the above-described incidents were "harassing" and that Dr. Koski "harassed" her because of her national origin. Ex. A, Pl. Dep. at 76:4-6. When asked why plaintiff believed that Dr. Koski harassed her because of

her national origin, plaintiff testified that "[b]ecause for no reason I was – I mean, I always carried myself as a professional. I go there and work with the children and to go over all these things, that is, I don't – I have never disrespected anyone. I always carried myself as a professional." Ex. A, Pl. Dep. at 76:9-19. Plaintiff testified that she believed Dr. Koski "harassed" her "[t]o get [plaintiff] out of the school" "[b]ecause [plaintiff] was never wanted . . . in the school." Ex. A, Pl. Dep. at 74:14-22. However, when asked why plaintiff believed that she was never "wanted" at P.S. 26, plaintiff testified "I don't know." Ex. A, Pl. Dep. at 74:23-25.

In her deposition, plaintiff testified that Dr. Koski would look at her students' assignments because of her race and/or national origin "[b]ecause of the treatment [plaintiff] was getting" and "[b]ecause that never . . . happened to [plaintiff] in any other school." Ex. A, Pl. Dep. at 91:16-23. Plaintiff also testified that Dr. Koski required plaintiff to meet with her because of plaintiff's race and/or national origin. Ex. A, Pl. Dep. at 99:15-19. When asked why plaintiff believed that Dr. Koski requested meetings with plaintiff supposedly because of plaintiff's race and/or national origin, plaintiff testified, "I never did anything to the people. I showed respect. I show respect to anyone and I carry myself in a professional manner and to be treated like that." Ex. A, Pl. Dep. at 99:20-25; 100:1.

However, plaintiff's own speculation and conclusory allegations are not sufficient to demonstrate a discriminatory motive. See Jordan v. Olsten Corp., 25 Fed. Appx. 45, 47 (2d Cir. 2001)(plaintiff could not rely on the conclusory and speculative allegation that she was terminated for "racial reasons" in opposing summary judgment, "but instead must offer evidence to show that [the plaintiff's] version of the events is not wholly fanciful.")(internal citation omitted); Hawana v. City of New York, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002)(conclusory assumptions are not enough to support an inference of discriminatory motives). Indeed,

plaintiff's unsupported speculation and conjecture cannot suffice to carry plaintiff's burden under any of the anti-discrimination laws. Byrnie, 243 F.3d at 103; Manessis v. New York City Dep't of Transp., 2003 U.S. Dist. LEXIS 1921, at *11 (S.D.N.Y. Feb. 10, 2003), aff'd in an unreported decision, 2004 U.S. App. LEXIS 1579 (2d Cir. 2004) citing Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995)("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.").

To the extent that plaintiff argues that a comment allegedly made by Dr. Koski at a staff meeting on the first day of the 2005-2006 school year regarding the use of the "T-H" sound in Haitian dialect – and taking this allegation as true for the purposes of this motion – it is at best a stray remark with no nexus to any adverse employment actions. See Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998)(noting that stray remarks by a decision-maker, with no nexus to the adverse employment action, do not, without more, establish discrimination); Pasha v. William M. Mercer Consulting, Inc., 2004 U.S. Dist. LEXIS 1226, at *14-17 (S.D.N.Y. 2004)(holding that a few isolated and ambiguous remarks, even when made by decision makers, could not support an inference of discrimination). The same can be said for plaintiff's unsupported allegation that Dr. Koski, on "three or four" occasions, "would repeat [certain words] the same way [plaintiff] pronounced them." Ex. A, Pl. Dep. at 53:17:20. Simply, plaintiff has presented no evidence to show that any of the alleged actions by defendants were motivated by discriminatory animus. See Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004)("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful") quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

Clearly, the instant record is devoid of any evidence that any alleged adverse employment decisions occurred under circumstances giving rise to an inference of race, color

and/or national origin discrimination. Plaintiff's conclusory and unsupported claims of race, color and/or national origin discrimination falls woefully short of supporting a *prima facie* case and thus, defendants are entitled to summary judgment as a matter of law.

**B.      Defendants Have Articulated Legitimate, Non-Discriminatory Reasons for Their Actions And Plaintiff Cannot Show That These Reasons Are False or Pretextual.**

Even if plaintiff could make out a *prima facie* case of race, color and/or national origin, this complaint still warrants dismissal because defendants' actions were motivated by legitimate non-discriminatory reasons. See <u>Fisher v. Vassar College</u>, 114 F.3d 1332, 1335-36 (2d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1075 (1998); <u>see also</u> <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 446 (2d Cir. 1999), <u>cert. denied</u>, 530 U.S. 1242 (2000)(Defendant's burden here is minimal). Defendants have established that plaintiff's teaching skills were deficient and despite the repeated efforts of her supervisors, plaintiff failed to improve her performance. See Point III(A)(1). As such, defendants had a legitimate business reasons for her unsatisfactory observations and annual evaluation, counseling memorandums and conferences regarding plaintiff's performance. Moreover, a court may not second-guess an employer's non-discriminatory business decisions. <u>Dister v. Continental Group, Inc.</u>, 859 F.2d 1108, 1116 (2d Cir. 1988)("it is not the function of a fact-finder to second-guess business decisions").

With respect to plaintiff's referral to the DOE's Medical Division, prior to this referral plaintiff had been absent from work for nearly a month and had submitted numerous doctor's notes which attested to her inability to function at work. Ex. AA, Note from K. David Tavakoli, M.D., dated November 10, 2005; Ex. BB, Note from K. David Tavakoli, M.D., undated; Ex. CC, Letter from J. Roosevelt Clerisme, M.D., dated November 17, 2005; Ex. EE, Note from K. David Tavakoli, M.D., dated November 28, 2005; Ex. FF, Letter from J. Roosevelt Clerisme, M.D., dated November 29, 2005.

Dr. Koski testified that she requested the medical examination "to make sure that it was best for the children for her to [] return to school" and that since Dr. Koski "d[id]n't know the ramifications of [plaintiff's] diagnosis, [she] wanted to have the Board of Education . . . determine whether or not she was fit to return to her job." Ex. D, Koski Dep. at 63:11-24. As such, defendants have articulated legitimate business reasons for plaintiff's referral to the medical division. Moreover, the medical examination resulted in the DOE <u>agreeing</u> with plaintiff's doctors that plaintiff was unable to work, thereby granting plaintiff's requested leave of absence.

Since defendants have articulated legitimate business reasons for their actions, the burden now shifts back to plaintiff to prove that the proffered reasons are a pretext for discrimination. That is, plaintiff must prove that defendants' proffered reasons were both false and also a pretext, or cover, for discrimination, and not the real reason for defendants' decisions. <u>See</u> <u>Hollander v. Am. Cyanamid C.</u>, 172 F.3d 192, 201 (2d Cir. 1999), <u>cert. denied</u>, 528 U.S. 965 (1999); <u>Malatesta v. Credit Lyonnais</u>, 2005 U.S. Dist. LEXIS 30334, at *20-21 (S.D.N.Y. Nov. 21, 2005). Here, plaintiff can point to no evidence to show that defendants' actions were false or motivated by discriminatory animus. <u>See</u> <u>Alleyne v. Four Seasons Hotel - N.Y.</u>, 2001 U.S. Dist. LEXIS 1503, at *51 (S.D.N.Y. Feb. 12, 2001), <u>aff'd</u>, 2002 U.S. App. LEXIS 1476 (2d. Cir. 2002). Therefore, defendants' motion for summary judgment must be granted and this complaint should be dismissed in its entirety.

**POINT IV**

**PLAINTIFF HAS FAILED TO ESTABLISH
HER RETALIATION CLAIM.**

To establish a *prima facie* case of retaliation under Title VII, plaintiff must show that she was (1) engaged in an activity protected under anti-discrimination statutes, (2) the defendants were aware of plaintiff's participation in the protected activity, (3) the defendants

took adverse action against plaintiff based upon his activity, and (4) a causal connection existed between plaintiff's protected activity and the adverse action taken by defendants. See Lizardo v. Denny's, Inc., 270 F.3d 94, 105 (2d Cir. 2001 citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993). Once the plaintiff establishes a *prima facie* case for retaliation, the burden shifts to the employer to establish legitimate non-retaliatory business reasons for their action. Cosgrove, 9 F.3d 1033 at 1039 (2d Cir. 1993). Finally, plaintiff must then prove that the proffered reasons are a pretext for retaliation.

Here, as outlined in point III(A)(2), plaintiff has not suffered any adverse employment action. Therefore, her retaliation claim, as a matter of law, must fail. Moreover, defendants have offered legitimate non-discriminatory reasons for any of the alleged materially adverse actions and plaintiff cannot demonstrate pretext given the record in this case. See Point IV(D) above. Based on the foregoing, plaintiff cannot prove that the reasons proffered by defendants for their actions and decisions were merely pretextual, and were motivated by retaliation. As such, defendants are entitled to judgment dismissing this action as a matter of law.

## POINT V

### PLAINTIFF HAS FAILED TO ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM.

In order to make a showing of discrimination by virtue of a hostile work environment, plaintiff must meet four elements: she must prove conduct (1) that is objectively severe or pervasive, that is, conduct that creates an environment that a reasonable person would find hostile or abusive, (2) that complainant subjectively perceives as hostile or abusive, and (3) that creates such an environment because of complainant's protective class. See Patane v. Clark, et al., 508 F.3d 106, 113 (2d Cir. 2007); see also Harris v. Forklift, Inc., 510 U.S. 17, 21-22 (1993).

20

In order to support an objective belief that the work environment was hostile, plaintiff would have to show that a reasonable person would have concluded that the work environment was hostile. See Harris, 510 U.S. at 21-22. The Supreme Court has held that Title VII is violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004), quoting Harris 510 U.S. at 21. Further, it is axiomatic that in order to establish a race-based and/or national origin-based hostile work environment claim under Title VII, a plaintiff must demonstrate that the conduct occurred because of her color or race. Alfano, 294 F.3d at 377-78. Here, plaintiff cannot establish, as a matter of law, that her workplace was "hostile" or "abusive," nor has she presented any evidence of race, color and/or national origin-based animus or discrimination.

Plaintiff's hostile work environment claim is premised upon the allegations that Dr. Koski "harassed" her by: (1) "be[ing] in [Dr. Koski's] office all the time with the letters of disciplinary actions" and would have "unannounced meeting[s];" (2) "coming to the room all the time and bring[ing] outsiders, people, . . . to my classroom;" (3) "very frequently" visiting her room and "[s]ometimes [asking] the children questions to explain what they are doing." Ex. A, Pl. Dep. at 57:12-22; 66:9-11; 72:2-16; see also point III(A)(3) above.

Certainly, these complained-of actions do not meet the first prong of a hostile work environment case, as they are not severe or pervasive. In considering whether a work environment is hostile, the Court should look to the "totality of the circumstances." Patane, 508 F.3d at 113. Factors that are helpful in making this assessment are the frequency of the conduct, the severity of the conduct, whether the conduct is threatening and humiliating or whether it is a mere offensive utterance, and whether the conduct unreasonably interferes with the plaintiff's

work performance. Id. Here, the conduct described by plaintiff about Dr. Koski, even if true, does not rise to the level of a hostile work environment because it was not pervasive, nor was it severe or humiliating.

Moreover, plaintiff cannot point to any admissible evidence in the record that would even suggest that any alleged "hostility" directed at plaintiff was motivated by her race, color and/or national origin. Plaintiff's conclusory assertions that Dr. Koski harassed her because of her race, color and/or national origin does not demonstrate that any perceived "hostility" was racially motivated. See Hawana, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002)(conclusory assumptions are not enough to support an inference of discriminatory motives).

Finally, to the extent that the allegation that a comment was allegedly made by Dr. Koski at a staff meeting on the first day of the 2005-2006 school year regarding the use of the "T-H" sound in Haitian dialect, such a comment must be construed as merely a "stray remark" that does not rise to the level of discrimination or a hostile work environment. Indeed, numerous New York courts have refused to find a hostile work environment in situations much more egregious than those alleged here. See, e.g., De La Concha v. Fordham Univ., 5 F.Supp.2d 188, 190 (S.D.N.Y. 1998)(finding supervisor's racially offensive comments over a five month period insufficient to withstand summary judgment on a hostile work environment claim), aff'd, 173 F.3d 843 (2d Cir. 1999); Bolden v. New York City Hous. Auth., 1997 U.S. Dist. LEXIS 16772 (S.D.N.Y. Oct. 27, 1997)(finding that, as a matter of law, the use of five racially derogatory remarks over a period of six weeks insufficient, without more, to establish the existence of a hostile work environment); see also Stepheny v. Brooklyn Hebrew Sch. for Special Children, 356 F.Supp.2d 248, 264 (E.D.N.Y. 2005). Similarly, plaintiff's unsupported allegation that Dr. Koski, on "three or four" occasions, "would repeat [certain words] the same

way [plaintiff] pronounced them" does not suffice to establish a hostile work environment claim. Ex. A, Pl. Dep. at 53:17:20.

Accordingly, plaintiff has not asserted any allegations sufficiently severe or pervasive by which she can establish a hostile work environment claim and, therefore, this claim must be dismissed.

## POINT VI

### PLAINTIFF'S §§ 1981 AND 1983 CLAIMS SHOULD BE DISMISSED.

**A.    § 1981**

Plaintiff alleges that the "practices of Defendants DOE, Koski and Gershman constitute unlawful discriminatory practices within the meaning of . . . § 1981." Ex. B, First Amended Complaint, at ¶ 26. As shown above, plaintiff has not provided sufficient evidence to permit a jury to find intentional race discrimination.[4] Thus, plaintiff cannot show liability under § 1981 regardless of plaintiff's ability to show a municipal policy. Los Angeles v. Heller, 475 U.S. 796 (1986). However, plaintiff has not shown a municipal policy that caused the violation of any of her constitutional rights. See Jett v. Dallas Independent School District, 491 U.S. 701 (1989)(must show Monell to state a claim against a municipality under § 1981). Thus, plaintiff's failure to show Monell is fatal to her § 1981 claims. Indeed, while plaintiff alleges that certain employees' actions were motivated by discriminatory and retaliatory animus, the record is simply devoid of any evidence that the actions taken herein were part of an unconstitutional policy, practice or custom of the City of New York or DOE. Accordingly, the plaintiff's § 1981 claims must be dismissed.

**B.    § 1983**

---

[4] Plaintiff's claims of discrimination based on national origin are not cognizable under § 1981. See Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998)

Similarly, in order to hold the DOE liable under § 1983, plaintiff must show that her civil rights were violated as a result of a municipal policy or custom. See Monell, 436 U.S. at 690-91; Davis, 228 F.Supp.2d at 336-37 (S.D.N.Y. 2002). However, as noted above, plaintiff cannot demonstrate that her civil rights were violated and therefore cannot make out a case for municipal liability. See Los Angeles v. Heller, 475 U.S. 796 (1986); see also Perez v. New York City Police, 2000 U.S. App. LEXIS 29314 (2000). Moreover, plaintiff does not even articulate the custom or policy that caused plaintiff's alleged injuries, much less present any evidence to support such an allegation. In the absence of any such record evidence, plaintiff's claim of municipal liability under § 1983 fails as a matter of law.

**POINT VII**

**DEFENDANTS KOSKI AND GERSHMAN ARE ENTITLED TO QUALIFIED IMMUNITY.**

Even if there were a basis for imposing liability on the merits of plaintiff's claims, the claims asserted against Dr. Koski and AP Gershman should be dismissed because they are entitled to qualified immunity.[5] Qualified immunity is "an immunity from suit rather than the mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial." Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1773 (2007) quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The Supreme Court has "repeatedly stressed" that it is necessary that "qualified immunity questions should be resolved at the earliest possible stage of litigation." Scott, 127 S.Ct. at 1773 quoting Hunter v. Bryant, 502 U.S. 224, 227,112 S. Ct. 534 (1991) (per curiam). The question of qualified immunity is independent from the merits of the underlying action and

---

[5] Similarly, plaintiff's Title VII claims must be dismissed against Dr. Koski and AP Gershman as the Second Circuit has held that Title VII only allow a cause of action against an "employer." See Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam). An "employer" is not construed to mean a supervisor or other agent of the entity that employs the plaintiff and therefore on the employer, and not individuals, is the proper defendant. See Tomka v. Seiler, 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds.; Wrighten, 232 F.3d at 120. Thus, the Title VII claims against Dr. Koski and AP Gershman must be dismissed.

must be examined independent of the underlying claims. See Saucier v. Katz, 533 U.S. 194, 204 (2001). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Saucier 533 U.S. at 202 quoting Malley, 475 U.S.335, 341 (1986).

The qualified immunity determination begins with an analysis of whether, on the facts alleged, the alleged conduct violated a constitutional right. Scott, 127 S.Ct. at 1774. Assuming that the first prong is satisfied, the Court must then inquire whether the right was "clearly established" at the time of the alleged incident. Id. As discussed above, plaintiff has not provided any basis to support a claim that Dr. Koski and/or AP Gershman violated any of her constitutional rights. Moreover, because it was certainly reasonable given the facts and governing law for Dr. Koski and AP Gershman to observe, evaluate, generate letters to file and constructively criticize plaintiff's performance, when necessary, they are entitled to qualified immunity on plaintiff's constitutional claims regardless of whether this Court ultimately determines that plaintiff's constitutional rights were violated as a matter of law. See Lennon v. Miller, 66 F.3d 416, 423 (2d Cir. 1995).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court issue an order granting defendants' motion for summary judgment and dismissing plaintiff's Amended Complaint in its entirety, with prejudice, and awarding defendants such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          May 1, 2009

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the
                        City of New York
                    Attorney for Defendants
                    100 Church Street, Rm. 2-146
                    New York, New York 10007
                    (212) 676-2750
                    aoconnor@law.nyc.gov

                  By:    _____
                    Andrea O'Connor
                    Assistant Corporation Counsel

Diana Goell Voigt,
Andrea O'Connor
Of Counsel.

## CERTIFICATE OF SERVICE BY U.S. MAIL

I hereby certify that on May 1, 2009, I caused a true and correct copy of the foregoing DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT to be served on David C. Wims, Esq., counsel for plaintiff, by causing to be deposited a copy of the same, enclosed in a first class post paid properly addressed wrapper, in an official depository located at 100 Church Street, in the Borough of Manhattan, City of New York, regularly maintained by the Government of the United States in said City, directed to the said plaintiff's counsel at David C. Wims, Esq., 1430 Pitkin Ave., 2nd Floor, Brooklyn, New York 11233, that being the address designated for that purpose.

Dated:  New York, New York
      May 1, 2009

 

                               MICHAEL A. CARDOZO
                               Corporation Counsel
                                 of the City of New York
                               Attorney for Defendants
                               100 Church Street, Room 2-146
                               New York, New York 10007
                               (212) 676-2750

By:                                   
                               Andrea O'Connor (AO4477)
                               Assistant Corporation Counsel